The opinion of the Court was delivered by
Gibson J.
The act of 1785 prescribes the services to be rendered by deputy surveyors to their employers, and the fees that may be demanded as a compensation. It is extremely clear, that where the services enjoined by the act have not been fully rendered, the officer is not entitled to any thing by virtue of the provisions of the act, which gives nothing for incomplete services. Now, it is expressly made the dut^p.f.-the surveyor, where he is not otherwise directed by the Owner of the warrant, to make every survey by going on the ground, and running, marking, and measuring, the lines of each tract. It is very true, the running and marking the outline of a number of tracts laid in one body, will vest the title, and be a sufficient appropriation of the included land as against the commonwealth, and every person claiming under her. This doctrine has been uniformly held by this Court, and to hesitate now, would be pregnant with mischief. But that is a very different question from the officers’ right to fees. The legislature in designating the acts of duty he was bound to perform, had in view a survey and single warrant, and not the collocation of a number of warrants by one survey. The owner of warrants thus located, has a right to have the intermediate lines run and marked, precisely as if each warrant had been surveyed separately : and it is the official duty of the officer to do it without being specially re *105 quired. This duty was not introduced for the first time by the act of 1/8S; but existed under the proprietary government. When a warrant is put into a deputy surveyor’s hands for execution without particular instructions, he undertakes to perform all the duties prescribed by law ; and the contract between the parties having reference to the existing law, is as definite as to the particulars embraced, as if the acts to be done were specially expressed. The contract is entire; and if the officer voluntarily leaves a part of it unperformed, he cannot recover any thing, either as fees by virtue of the provisions of the act, or a compensation on principles of common law. The party, however, for whose benefit the service is to be performed, may, if he please, wave a part of it, and either throw-in to the officer the labour thereby saved, or, in consideration of it, stipulate for a compensation less than the legal fees, and such contract will be binding. This is the only exception to the rule; for it cannot be, that the surveyor can, without the assent of his employer, change the terms of the agreement, and of his own mere will dispense with any part of the duties enjoined on him by law. But it seems that in executing what are called “ company warrants,” a custom has prevailed among deputy surveyors of making a general survey including them all in an outline, as was done in this cáse ; and this custom is relied on as giving the officer a right, if npt to full fees, at least to a compensation proportioned to the value of the services actually rendered. On this point I instructed the jury, that if Messrs. Dallas and Ingersoll in fact knew of the existence of this custom when they put their warrants into the deputy' surveyor’s hands without special instruct tions, the fact of their knowledge would be evidence from which an assent to have the surveys made according to the custom might be presumed ; and the matter was thus subr mitted to the jury on ground as favourable to the plaintiffs as they had any right to require. It is further contended that this practice — for it cannot be called a custom — is so general and so firmly established,that Messrs.Dallas andihj-erso/iwere bound to take notice of it, and their having been in fact ignorant of its existence is immaterial. To this it is a sufficient answer, that when this survey was made, the practice had been continued in the face of a statute designed to prevent it. It was established at a time when its operation, even on the validity *106 of the title to land thus surveyed, was neither known nor cared for. All that deputy surveyors knew with certainty was, that the practice was a bad one, and a violation R>eir duty. It originated in indolence and motives of personal convenience to the officer : in an endeavour to obtain the compensation allowed, without rendering the services enjoined, by the law: and in a total disregard of its consequences to the public, which at that time could not be foreseen, but which have since been found extremely mischievous, and productive of much uncertainty and litigation as to boundary. This custom, having thus originated, and thus operating, could not, even were the act of assembly out of the way, have the force of a law ; and if it have not, no one is bound to take notice of it. It is not like a particular usage of trade, resorted to for the purpose of expounding the contract of insurance where its meaning would be otherwise doubtful; for in that case, there is no other standard by which to measure the subject matter of the agreement: here the act of assembly furnishes a safer, and the only, standard. If the practice had the force contended for, it would bind, even against the assent of the party ; and the officer might even refuse to comply with special instructions, where they were in fact given, and yet recover his fees : and if this cannot be successfully pretended, how can it be urged that he is entitled, to either full fees, or a quantum meruit, where the owner of the warrant cannot be supposed to have waved any part of the service the law authorised him to exact ? The difficulty arises in the mind, from considering that such a survey entitles the owner of the warrants to a patent for each tract; conducing in this way in some degree to his benefit; and that the officer therefore has a conscionable claim to compensation proportioned to the benefit received from his labour. But it is not every benefit conferred that will raise-an assumpsit. The services here rendered, were not those which the officer was requested to perform ; and the law will not imply an assumpsit from a moral obligation only. I cannot, however, discover even a moral obligation on the part of the employer. The extent of the officer’s merit is, that he has not entirely destroyed by his misconduct the title of the warrant-holder to the land located; but the positive benefit to the latter is comparatively nothing; as a re-survey is necessary to designate each tract separately, in making which, the lines, *107 before run and marked are of little use. The rule to shew cause must be discharged.
Duncan J.,
gave no opinion, having been concerned for the defendant.
Rule discharged.